**Benjamin P. Davis**
California State Bar No. 275918
**Federal Defenders of San Diego, Inc.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Benjamin_Davis@fd.org

Attorneys for Mr. Richard Glen Mathews

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
### (HONORABLE ROGER T. BENITEZ)

| | |
|---|---|
| **United States of America,** | Case No. 91cr-0663-BEN-02 |
| Plaintiff, | Date: January 23, 2023 |
| v. | Time: 2:00 p.m. |
| **Richard Glen Mathews,** | **Mr. Mathews's Sentencing Memorandum** |
| Defendant. | |

**To:** **Randy Grossman,** United States Attorney; and
**Daniel E. Zipp,** Assistant United States Attorney:

The defendant, Richard Glen Mathews, by and through his counsel, Benjamin P. Davis and Federal Defenders of San Diego, Inc., respectfully asks the Court to sentence Mr. Mathews to **the 31-and-a-half years of punishment** he has already served for his crime.

# I.

# Procedural Background

**A.    Conviction and sentence.**

On January 14, 1993, Mr. Mathews was convicted after a jury trial of several counts related to a bombing of a rival gang member's house. Dkt. No. 62. He was first sentenced on April 12, 1993. Dkt. No. 73. After two successful appeals of the sentence, a final judgment was entered on October 14, 1997, sentencing Mr. Mathews to a total of 495 months in prison. *See* Judgment & Commitment, Dkt. No. 118. The bulk of the sentence was a mandatory minimum consecutive term of 30 years for Count 3, using a destructive device during a crime of violence, under 18 U.S.C. § 924(c)(1)(B)(ii).

**B.    *Johnson* petition and re-sentencing.**

Mr. Mathews filed a petition to vacate his § 924(c) conviction on Count 3 on June 2, 2016, following the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015). Dkt. No. 125. This Court denied the petition on September 18, 2019. Dkt. No. 151. On June 13, 2022, the Ninth Circuit vacated Mr. Mathews's conviction on Count 3 and remanded to this Court for re-sentencing. *United States v. Mathews*, 37 F. 4th 622 (9th Cir. 2022). This Court spread the mandate on August 29, 2022, and scheduled a re-sentencing hearing for November 7, 2022. Dkt. No. 164. After the preparation of a supplemental Presentence Report, sentencing was set for January 23, 2023.

As of that date, Mr. Mathews will have served 378 months and 14 days – or over 31-and-a-half years – in prison for his crimes.

**C.    The Presentence Report, addenda, and Objections.**

The Presentence Report was originally filed on February 23, 1993. The government filed legal objections on March 18, 1993, objecting to the proposed Guidelines calculations, but filed no factual objections or disputes. *See* First Addendum to the PSR (April 7, 1993). Subsequent addenda were filed on July 20,

1995; September 30, 1997; October 8, 1997; December 16, 2022; and January 17, 2023. The government never filed any objections to the recitation of facts contained in the Presentence Report or in any subsequent addendum.

Mr. Mathews filed an Objection to the 2022 Addendum on January 9, 2023, arguing that the statutory maximum for Count Two is ten years, not twenty. *See* Dkt. No. 169. The government has not opposed this objection. *See* Gov. Sent. Memorandum, Dkt. 171, at 5 n.1.

## II.

### **Richard Glen Mathews**

At age 70, Richard Glen Mathews is far removed from the damaged, willful younger man who got himself into so much trouble in his twenties and thirties. Now a grandfather who has spent his time in prison reading and studying, he has spent three decades paying for his reckless and dangerous offense.

There's no doubt about it: his crime was very, very serious, and worthy of a significant and severe punishment. Planting a potentially lethal bomb at the house of a rival gang member who had threatened his life was morally indefensible and terribly dangerous. That the bomb went off and severely injured Mr. Mathews's own friend, James Wilson, was a terrible and predictable outcome of that decision. His conduct unquestionably earned him a long prison sentence in order to deter, incapacitate, and punish him.

The three decades of punishment Mr. Mathews has endured for his crime have served those goals. In the past thirty years, he lost family members and friends who drifted away, unable to sustain their relationships with him as he moved around the country's federal prison system. He battled addiction and despair, believing at various times that he would die behind bars as his health worsened. And he confronted the cold fact that his reckless and violent actions toward a gang leader he thought was trying to kill him had in fact badly hurt an innocent bystander whom he considered a friend.

He's also made slow, fitful, but undeniable progress toward becoming a better man through the long years of his punishment. He spent 18 years working in prison industries making signs at a factory, eventually becoming the lead man of his crew. He got clean and stayed that way for over sixteen years. He dropped out of the motorcycle gang and left those associates behind. He took full advantage of the Bureau of Prisons' programming opportunities, receiving dozens of certificate of achievement during his long incarceration and working to improve himself. And he's tried to make new connections and relationships to replace the old ones, striking up a romantic friendship with a partner whom he hopes someday to join in San Diego. The past thirty years have not only punished, incapacitated, and deterred him; they have rehabilitated him as well.

For these reasons, Mr. Mathews respectfully asks the Court find that the past 31 years of incarceration are sufficient to satisfy the sentencing goals of 18 U.S.C. § 3553(a).

**A.    Background.**

Richard Mathews was born in Long Beach but grew up in the Inland Empire, moving to San Bernardino when he was a baby. His childhood was tumultuous. His father abandoned the family when young Rick was only three years old and went on to spend much of Rick's childhood in prison; Mr. Mathew last saw him in 1965 and believes he drank himself to death in the early 1990s. In 1970, he joined the Army out of high school and served for two years in Panama. Upon his general discharge, he returned to the Inland Empire and married his girlfriend, Sandra, whom he'd met while home on leave. Their son was born in 1973.

To support Sandra and his young family, Mr. Mathews worked for the parks department in Upland, outside of San Bernardino. But like many young men returning from military service in the early 1970s, Mr. Mathews struggled with adapting to civilian life. He was young and hotheaded and prone to getting into fights alongside his roughnecked companions. One fight in a bowling alley on his

wife's birthday in 1976 led to his getting shot in the leg, resulting in amputation after gangrene set in. After his amputation, Mr. Mathews went on disability and filled his free time with drinking and pain medication. He started carrying a gun and associating with dangerous people he'd met around town. Later in the same year, while still on crutches from the amputation, he was attacked by a knife-wielding assailant at a friend's funeral. The attacker sliced open Mr. Mathews's face, leaving him with 52 stitches; Mr. Mathews shot the man in self-defense.[5]

The following year, his associations with violent companions reached their nadir. While at a liquor store one night, he and a companion ran into someone the companion had beef with. After an altercation in which the antagonist pulled a knife, Mr. Mathews drove the companion to pick up a gun, and then drove back while the companion fired on the group. One person was killed, and Mr. Mathews was convicted of aiding and abetting the murder.

This prison sentence, Mr. Mathews's first, taught him all the wrong lessons. He learned to respond to aggression with aggression and to never show weakness. He met other tough, ex-military, hard-drinking guys like himself, and they introduced him to the violent and testosterone-fueled world of motorcycle gangs. He witnessed racial violence and learned what he later called "the law of the jungle." When he was paroled in 1990, he had a newly acquired addiction to meth and an even worse set of bad influences. His wife and son, the things that might make him want to live a straight and quiet life, were long gone after a divorce in 1980 while he was in prison. He emerged hardened and with a hair trigger temper.

**B.    The crime.**

The facts of the crime well known to the Court. Mr. Mathews learned in 1991 that a gang leader, James Rivera, had put out a contract on him for insubordination. As he had learned in prison, Mr. Mathews decided to respond to that threat with one

---

[5] Cf. 1993 PSR at 7 ("The charges were dismissed and it was ruled self-defense.").

*U.S. v. Mathews*, 91CR-0663-BEN-02 – Def. Sentencing Memorandum - 5

of his own. Along with a co-defendant, he assembled a pipe bomb and planted it at Mr. Rivera's house in National City, with the intent to scare Mr. Rivera into backing off. Of course, the bomb was picked up by a local man named James Wilson and went off, causing severe injuries.[6]

Mr. Wilson was a friend of Mr. Mathews's – they'd had drinks just the night before the bombing. Mr. Mathews never intended for anyone to pick up the bomb; he'd simply hoped it would send a powerful and violent message to its intended recipient. Of course, planting any kind of bomb in the first place is a terribly reckless and dangerous act, and he should have known well that an innocent bystander could have been badly injured by the blast. Mr. Mathews carries enormous guilt over his wounding of his neighborhood friend, and has come to realize while serving his sentence that it was his instinct to respond to violence with violence that caused that damage. He is sorrowful for Mr. Wilson's injuries and mourned his death many months later when he eventually passed away from an unrelated illness.

## C.    Incarceration.

In the past thirty years, Mr. Mathews has tried to serve his punishment. He's worked in prison industries, taken drug rehabilitation classes, and done his best to atone for his crime. During the nearly half his life he has spent in the prison system, he's worked on himself – both learning new skills for an eventual life on the outside, and learning how to reform himself. His certificates include:

- Wood working training;
- Aviation electronic assemblies;
- Soldering skills and shop safety;
- High reliability soldering;

---

[6] As the PSR confirmed, Mr. Wilson later died of an unrelated illness. 1993 PSR at 5 ("According to his autopsy, there was no evidence that his death was related to the injuries from the bomb blast."). The government has never objected to this factual finding of the PSR.

*U.S. V. MATHEWS*, 91CR-0663-BEN-02 – DEF. SENTENCING MEMORANDUM - 6

- Drug treatment (non-residential);
- Drug education program;
- Anger, stress management, and domestic violence;
- Several plumbing courses, including residential plumbing, maintenance, and repair;
- Soldered Electrical and Electronic Assemblies;
- History courses;
- "Learn, Educate, Act, Prepare;"
- Nutrition;
- Real Estate;
- "Clean Up Your Credit;"
- Anger Management;

and several others. *See generally* Exhibit A.

He's also done his best to stay out of trouble. Despite two convictions for violence, he's never been charged or accused of any violence during his three decades in federal custody. His writeups from the 1990s are mostly for drug possession, and one for possessing a weapon almost twenty years ago. But since 2005, he's had one writeup for a dirty test, in which he candidly admitted that he'd "fallen out" after sixteen years of sobriety. But his prison records reflect no violence, no gang altercations, and no serious violations of law while in custody. He's tried to leave that life behind him and to focus on whatever future he may have left for himself.

And he hopes to have a future. He's struck up a romantic friendship with Robin Scott, a San Diego lady in her late seventies who hopes to spend her sunset years fishing, hiking, and relaxing with Mr. Mathews by her side. He's got family relationships he'd like to repair, including with his son, with whom he hasn't had much of a relationship over the years. He has a granddaughter in her twenties whom

he barely knows, and a lifetime's worth of regrets and wrongs to try to set right. Once he's released, he'll spend the time he has left grateful for little things, like sitting in the sun next to a woman who cares for him, or fishing peacefully in a stream in the Laguna mountains. He's had to unlearn the law of the jungle that set him on such a wrong path so many years ago, and he's determined to spend the rest of his time peacefully and at rest.

## III.

## Statutory Maximums

In his Objections to the Presentence Report, Dkt. No. 170, Mr. Mathews demonstrated that the statutory maximum for Count Two is ten years. The government has not opposed this Objection, *see* Dkt. No. 171 at 5 n.1. Accordingly, the statutory maximum sentences are as follows:

| Count | Statute | Name | Maximum |
|---|---|---|---|
| 1 | 18 U.S.C. § 371 | Conspiracy | Five years |
| 2 | 18 U.S.C. § 844(i) | Bombing property | Ten years |
| 5 | 18 U.S.C. § 922(g) | Felon in possession | Ten years |
| 6 | 26 U.S.C. §§ 5861(f) & 5871 | Manufacture destructive device | Ten years |
| 7 | 26 U.S.C. §§ 5861(d) & 5871 | Possess unregistered firearm | Ten years |

## IV.

## The Guidelines

**A.    The Court must sentence Mr. Mathews with the 1990 Guidelines Manual.**

"Using a Guidelines Manual revised after an offense occurred to calculate a Guidelines range for that offense violates the ex post facto clause if the revision leads to a higher punishment." *United States v. Wijegoonaratna*, 922 F.3d 983, 992 (9th Cir. 2019). "For this reason, a defendant must generally be sentenced under the

Guidelines Manual that was in effect when the offense occurred." *Id.*; *see also Peugh v. United States*, 469 U.S. 530 (2013).

Because the current Guidelines for Mr. Mathews's offense are higher than those under the 1990 Manual in place at the time of his crime in 1991, the Court must use the 1990 Manual in order to avoid an unconstitutional ex post facto punishment.

    **1.**    <u>Guidelines under the 1990 Manual.</u>[7]

The 1990 Manual assigned the following adjusted offense levels for Mr. Mathews's counts of conviction:

| | | |
|---|---|---|
| Counts 1 & 2 | 24 | § 2K1.4(a)(1)(A) |
| Count 5 | 12 | § 2K2.1(a)(2) |
| Count 6 | 18 | § 2K2.1(a)(1) |
| Count 7 | 18 | § 2K2.1(a)(1) |

However, the Guideline for each count also provided a cross-reference to the Guideline for the most analogous substantive offense and directed that whichever adjusted offense level was higher would apply. *See* § 2K1.4(c); § 2K2.1(c)(2). Each version of Mr. Mathews's PSR found that the proper analogous offense was aggravated assault. *See* Fourth Addendum to PSR at 2 (1997).

The Guidelines for aggravated assault under the 1990 Manual are:

**Cross-reference: aggravated assault  [1990 calculations]**

| | | |
|---|---|---|
| <u>Base offense level</u> | 15 | § 2A2.2(a) |
| <u>More than minimal planning</u> | +2 | § 2A2.2(b)(1) |
| <u>Use of firearm + permanent injury</u> | +9 | §§ 2A.2(b)(2)(A) & (b)(3)(C)[8] |

---

[7] The pertinent Guidelines from the 1990 Manual are attached for convenience as Appendices A (§ 2K1.4), B (§ 2K2.1), and C (§ 2A2.2), respectively.

[8] "[T]he cumulative adjustments from [subsections] (2) and (3) shall not exceed 9 levels." U.S.S.G. § 2A2.2(b) (1990 ed.).

*U.S. V. MATHEWS*, 91CR-0663-BEN-02 – DEF. SENTENCING MEMORANDUM - 9

<u>Adjusted offense level</u>        26

Because the adjusted offense level for aggravated assault under § 2A2.2 is greater than the adjusted offense levels assigned under §§ 2K1.4 and 2K2.1, respectively, it becomes the adjusted offense level for each count. Accordingly, under the 1990 Manual, the adjusted offense level for each count is 26. Under Chapter 3, all the counts group together, as they involved the same victim and act under § 3D1.2(a), and the resulting highest offense level of the grouped charges is **26.**

  **2.** <u>Guidelines under the 2021 Manual</u>.

  The current Guidelines Manual was last substantively amended in 2018 and republished in 2021. In the current Manual, the process for calculating the Guidelines is the same: begin with the offense levels for each count, cross-reference to the aggravated assault Guidelines, and use whichever is higher.

  Under the 2021 Manual, the base offense levels for the Counts 1 and 2 (conspiracy and substantive bombing of property) remain at 24. U.S.S.G. § 2K1.4(a)(1)(A) (2021 ed.). However, the base offense level for Count 5 (felon in possession) is different:[9]

| **Count 5 – 18 U.S.C. § 922(g)** | [2021 calculations] | |
|---|---|---|
| <u>Base offense level</u> | 22 | § 2K2.1(a)(3) |
| <u>Destructive device</u> | +2 | § 2K2.1(b)(3) |
| <u>Use in felony</u> | +4 | § 2K2.1(b)(6) |
| <u>Adjusted offense level</u> | 28 | |

---

[9] The Guidelines for the analogous offense of aggravated assault are also slightly different in 2021, although they result in the same adjusted offense level of 26. The 2021 Manual begins with a base offense level of 14 instead of the 15 used in the 1990 Manual, but then permits up to ten levels for the application of subsections (b) and (c), compared with the nine-level increase permitted in the 1990 Manual. *See* §§ 2A2.2(a), (b)(1), (b)(2)(A), and (b)(3)(C) (2021 ed.). The resulting offense level for § 2A.2.2 under either Manual is therefore a 26.

For Counts 5, 6, and 7, therefore, the Guideline produced by § 2K2.1 (adjusted offense level 28) is *higher* than the Guideline for the analogous aggravated assault (adjusted offense level 26). Accordingly, that higher adjusted offense level would be used in lieu of the level for the corresponding analogous offense. § 2K2.1(c)(1)(A). And under the grouping rules in Chapter Three, which direct the Court to use "the highest offense level of the counts in the Group," § 3D1.3(a), the adjusted offense level for these Counts would be the highest in the Group, rendering the adjusted offense level assigned to the Group a **28.**

To summarize: the Court must sentence Mr. Mathews with the current Guidelines Manual unless doing so would raise an *ex post facto* problem by exposing him to higher Guidelines than were in place when he committed the offense. The 1990 Manual produced an adjusted offense level of **26** for each count, which became the adjusted offense level for the entire Group under § 3D1.2. The 2021 Manual, however, produces a level of **28** for Counts 5, 6, and 7, which then in turn becomes the adjusted offense level for the entire Group under § 3D1.2.

Because the 2021 Manual results in a higher Guidelines range than the Manual in place when Mr. Mathews committed the offense, this Court must sentence Mr. Mathews with the 1990 Manual and use the adjusted offense level of 26.

At an adjusted offense level of 26, and in criminal history category III, Mr. Mathews's Guidelines are therefore **78-97 months** for each count.

The Fifth Addendum to the Presentence Report agrees with these calculations, and has recommended that the Court sentence Mr. Mathews to 97 months in custody on Counts Two, Five, Six, and Seven, concurrent, and 60 months on Count One, concurrent. PSR Addendum at 8. The government's sentencing memo makes no reference to the Sentencing Guidelines at all, but asks the Court to sentence Mr. Mathews to 495 months in custody. Dkt. 171.

# V.

## The Court Should Sentence Mr. Mathews to the 31 Years He Has Spent in Prison

Mr. Mathews respectfully asks the Court to sentence him to the 31 years of punishment, deterrence, incapacitation, and rehabilitation he has already served for his very serious crime. He submits that this sentence is enough to satisfy the § 3553(a) factors in light of:

- His significant post-conviction rehabilitation under *Pepper v. United States*, 562 U.S. 476 (2011);
- The significant medical issues he has suffered in custody, including the shattering of his left femur in September of 2022 (requiring surgery) and a possible diagnosis of bone cancer (*see* Fifth PSR Addendum, Dkt. 169, at 5);
- His current age (70 years old) and the concomitant decrease in the likelihood that he would ever engage in violent or antisocial conduct again after his release;
- His shrinking window to enjoy a modicum of peace and rest, with a good woman to care for him, after a life of constant stress and fear behind bars.

Mr. Mathews committed a very, very serious crime, and has been very, very severely punished for it. He respectfully submits that this three decades of prison are sufficient to satisfy the goals of sentencing.

Respectfully submitted,

Dated: January 18, 2023    s/ *Benjamin P. Davis*
**Benjamin P. Davis**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Mathews