**Benjamin P. Davis**
California State Bar No. 275918
**Federal Defenders of San Diego, Inc.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Benjamin_Davis@fd.org

Attorneys for Mr. Richard Glen Mathews

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA
# (HONORABLE ROGER T. BENITEZ)

| | |
|---|---|
| **United States of America,**<br><br>Plaintiff,<br><br>v.<br><br>**Richard Glen Mathews,**<br><br>Defendant. | Case No. 91cr-0663-BEN-02<br><br>**Mr. Mathews's Response to the Government's Sentencing Memorandum** |

## I.
## Introduction

Mr. Mathews is set to be re-sentenced on January 23, 2023, following the vacatur of his § 924(c) conviction. The Probation Office has filed an updated Presentence Report, Dkt. No. 169, and the parties have filed their respective sentencing positions. Dkt. Nos. 171, 173.

The PSR and Mr. Mathews both calculate the Sentencing Guidelines at 78-97 months. *See* Dkt. Nos. 169, 173, respectively. In light of those Guidelines, both Probation and Mr. Mathews request that the Court sentence him to the 31-and-a-half years he has already served for his crime. The government's filing, however, contains

no Guidelines calculations, and instead asks the Court to sentence Mr. Mathews to 495 months – almost 120 months more than the punishment he has already served, and nearly 400 months above the high end of the Guidelines. Mr. Mathews files this short Response to address some of the government's arguments.

## II.

### Response to the Government's Sentencing Memorandum

**A. The government does not oppose Probation's and Mr. Mathews's calculations of the Guidelines.**

The government's sentencing submission omits any calculation of Mr. Mathews's Sentencing Guidelines. *See generally* Dkt. No. 171. The government likewise did not object to the Presentence Report's calculations. It appears therefore to have conceded that the calculations are correct.

The government's failure to even mention the Guidelines, let alone provide the Court with its own calculations, runs afoul of the Supreme Court's repeated admonishments about the importance of the Guidelines at sentencing. While no longer binding on district courts, the Guidelines "are to be the sentencing court's 'starting framework for sentencing' and 'anchor . . . the district court's discretion.'" *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016) (quoting *Peugh v. United States*, 569 U.S. 530, 549 (2013)). Indeed, "the Guidelines are not only the starting point . . . but the lodestar" for sentencing, *id.* at 200, and this Court is required by statute to take them into account for its sentencing decision. 18 U.S.C. § 3553(a)(5)(A).

As reflected in the Presentence Report, the Guideline range for Mr. Mathews's crime is 78-97 months. *See* Dkt. No. 169. While the Court is not bound by that range, the range is both the "starting point" and the "lodestar" that "anchors [this] Court's discretion." Accordingly, the Court should adopt that Guideline range as its starting point, notwithstanding the government's failure to mention it.

B.  **The government's filing repeatedly misstates the record: Mr. Mathews did *not* cause James Wilson's death.**

James Wilson was grievously injured by the bomb that Mr. Mathews conspired to plant at James Rivera's house: he suffered fractured bones in his arms and legs, lost his right pinky finger, and was rendered partially blind and deaf. *See* 1993 PSR at 3. These are serious and painful injuries that undoubtedly caused Mr. Wilson much suffering. But the bomb did *not* cause his death seven months later from an unrelated illness, and the government flatly misstates the record when it repeatedly claims the contrary.

The 1993 Presentence Report quotes directly from Mr. Wilson's autopsy report:

> In May, 1991, he (James Lee Wilson) suffered injuries from a bomb blast. He sustained several fractures of his extremities and lost the right fifth finger. Injuries to the rest of his body were superficial, although he was partially blind and deaf. He, however, recovered well. At the time of autopsy there was no evidence that his death was related to the bomb injuries. Therefore, the manner of death is considered natural.

1993 PSR at 3 (quoting autopsy report). The PSR also reported that Mr. Wilson had been diagnosed as suffering from a terminal illness before his death in December of 1991, seven months after he was injured. *Id.* at 13. It was this illness, not the bomb blast, that caused his "natural" death.

Despite many opportunities to do so, the government has never once objected to this factual finding of the Presentence Report – not in 1993, not in 1995, not in 1997, and not again in 2022. Its only objection in 1993 was to the cross-reference to Chapter 2A—Probation had recommended the Guideline for aggravated assault under § 2A2.2, but the government argued that the Guideline for "attempted murder" under § 2A2.1 should apply instead. *See* First Addendum to the PSR (April

7, 1993).[1] Notably, the government did *not* seek to cross-reference the Guideline for manslaughter (§ 2A1.3), second-degree murder (§ 2A1.2), or first-degree murder (§ 2A1.1), which it surely would have done had the bomb in fact caused Mr. Wilson's death. The government asked only for the "attempted murder" Guideline, *id.*, indicating that it believed there had been no actual murder at all – and the death of Mr. Wilson, had it been caused by the bomb, would plainly have been felony murder.

Notwithstanding its earlier failure to object to the facts in the Presentence Report, or its earlier recommendation of Guidelines consistent with an inchoate crime resulting in injury but not death, the government repeatedly claims that Mr. Mathews "caused" Mr. Wilson's death. *See*, *e.g.*, Gov. Sent. Mem. at 1 (claiming Mr. Wilson "later died of from his injuries"); 6 (the bomb "eventually killed an innocent bystander"); *id.* ("Mathews has killed at least three people"); 7 (bomb "maimed and killed an innocent victim"); *id.* (crime "resulted in the death of another human being"). These claims seem to ground in the statements of Mr. Wilson's family members that he died in December of 1991, two weeks after learning that his partial deafness and blindness would be permanent. *See id.* at 7; *see also* 1993 PSR at 5. But while the beliefs of the family members that the injuries hastened his death are natural, understandable, and sympathetic, they are contradicted by the autopsy, which reports that Mr. Wilson had "recovered well" from the injuries and that the cause of death was "natural." *Id.* at 3.

---

[1] At the initial sentencing, the district court sustained the government's objection and applied the cross-reference for attempted murder at § 2A2.1. The Ninth Circuit reversed this finding on appeal, and remanded for the district court to resentence Mr. Mathews using a different cross-reference. *United States v. Mathews (I)*, 36 F.3d 821, 823 (9th Cir. 1994). The Ninth Circuit's stray dictum that Mr. Wilson's death had been "accelerated" by the trauma from his injuries has no factual basis in the record. As the Ninth Circuit later twice recognized, Mr. Wilson "was severely *injured* when [the bomb] exploded." *United States v. Mathews (II)*, 120 F.3d 185, 186 (9th Cir. 1997) (emphasis added); *see also United States v. Mathews (III)*, 37 F.4th 622, 626 (9th Cir. 2022) (victim was "seriously *injured* by the detonation") (emphasis added).

The government has never before claimed that Mr. Wilson's injuries "caused" his natural death seven months later, and it has never sought (and still today does not seek) the imposition of any Guideline that would reflect such causation. The Court should not be led astray by the unsupported and charged language in the government's sentencing memo: Mr. Wilson's injuries, while severe and tragic, did not cause his death. He died of an illness, not a bomb.

**C. The government's argument for a sentence nearly 400 months over the high end of the Guidelines range, and nearly 120 months over the 31-and-a-half years he has served, is unreasonable.**

After Mr. Mathews's initial sentence was vacated on appeal due to an incorrect Guideline cross-reference (to attempted murder instead of the correct aggravated assault)[2], the district court resentenced him in 1995. On this occasion, the district court correctly applied the Guideline for aggravated assault, resulting in a Guidelines range of 78-97 months, the same as Mr. Mathews faces now. But the Court then chose to impose an upward departure of four levels in order to account for the seriousness of the crime – specifically, the seriousness of the risk of injury or death to the two occupants of the home. *Mathews (II)*, 120 F.3d at 187. With a resulting Guideline range of 121-151 months, the district court opted to sentence Mr. Mathews to the high end of 151 months on the same charges for which he now faces resentencing.

---

[2] In its sentencing memo, the government misstates the basis of the Ninth Circuit's reversal of the sentence. It claims that "the Ninth Circuit reversed the original sentencing judge for applying the (then mandatory) guidelines for first-degree murder." Gov. Sent. Mem. at 6. But the Guideline the district court erroneously imposed wasn't for first-degree murder under § 2A1.1, it was for *attempted* murder under § 2A2.1. *See Mathews (I)*, 36 F.3d at 823-824 (record demonstrates that "Mathews was reckless in creating a danger to human life" but not, "by even a preponderance of the evidence," that he had the intent to commit murder). The difference matters: as the PSR recognizes, and as the government has recognized through its failure to object to the PSR, the correct Guideline is § 2A2.2(b)(1) for aggravated assault. Fifth Addendum to PSR at 3.

On appeal, the Ninth Circuit again vacated the sentence. This time, the Court of Appeals ruled that, while the district court had had the legal authority to impose such an upward departure, it had abused its discretion and imposed an unreasonable sentence by departing upward by four levels instead of by a lesser amount. *Id.* at 189. The court noted that, by "adding four levels . . . [the district court] gave Mathews an offense level equivalent to what he would have received had he committed two additional offenses of equal or nearly equal seriousness as the bombing offense, plus one of somewhat lesser seriousness." *Id.* The court noted that "a four-level adjustment at elevated offense levels can have a dramatic effect on the length of the sentence quite disproportionate to what the sentence would have been for the analogous offense standing alone." *Id.* Accordingly, the court wrote, "[w]e therefore hold the extent of the departure unreasonable and remand for resentencing." *Id.*

This guidance from the Court of Appeals demonstrates that the government's recommendation of a 400-month upward variance to account for what it describes as the seriousness of the offense is greatly excessive. The factors the government points to – Mr. Wilson's significant injuries, the risk to others from the bomb, Mr. Mathews's criminal history, the need to protect the public, and the need for just punishment – are adequately captured by both the Guidelines and the 31-plus years in custody he has already served.

For example, the government cites Mr. Wilson's severe injuries as one basis for the nearly-400-month upward variance, arguing that the "base offense level 14" does not adequately capture the severity of those injuries. Gov. Sent. Mem at 6. But the base offense level is 15, not 14, *see* Fifth PSR Addendum at 3, and Mr. Wilson's severe injuries *are* captured by the Guidelines – Mr. Mathews receives the maximum *nine-level* upward enhancement for the combination of his planning and the "permanent or life-threatening bodily injury" to Mr. Wilson. *Id.* (citing U.S.S.G. § 2A2.2(b)(3)(C) (1990 ed.)); *see also* Def. Sent. Mem., Dkt. No. 173, at 9 (agreeing with USPO calculations). Along with the two-level enhancement for using a weapon,

these enhancements together bring the adjusted offense level to 26 – far above the government's mistaken reference to level 14.

The government's remaining arguments consist of a paragraph each on Mr. Mathews's admittedly serious criminal record, the need to protect the public, and just punishment. Gov. Sent. Mem. at 6-7. But these short and conclusory arguments offer no reason why these serious and weighty sentencing factors have not been served by the 31-and-a-half years of punishment, incapacitation, and deterrence that Mr. Mathews has already endured as his payment to society for his crime. The government does not, and cannot, justify why these factors require an additional nearly 120 months in custody over the time he has already served, much less why they should justify nearly an extraordinary, nearly 400-month upward variance over the high end of the properly-calculated Guidelines.

By ignoring the Guidelines completely, and by repeatedly misstating the record in order to make Mr. Mathews's admittedly very serious crime appear even worse than it was, the government has untethered its sentencing recommendation from the careful and sober framework for sentencing established by the Supreme Court and the Ninth Circuit. This Court should carefully consider the Guidelines range, the facts of the case, and the remaining § 3553(a) factors, and fashion a sentence that appropriately balances the aggravated nature of the crime and Mr. Mathews's record before 1991 against the very real punishment, deterrence, incapacitation, and rehabilitation represented by his past three decades in custody. He respectfully asks the Court to find that thirty-one-plus years in custody is a weighty, significant, and appropriate punishment for his serious crime.

Respectfully submitted,

Dated: January 23, 2023

s/ *Benjamin P. Davis*
**Benjamin P. Davis**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Mathews